UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JANG FANG CHEN *on behalf of*
*himself and others similarly situated*

                            Plaintiff,

                    v.

ARIRANG HIBACHI STEAK HOUSE, INC.
d/b/a Arirang Hibachi Steakhouse, 986
Restaurant Corp. d/b/a Arirang Hibachi
Steakhouse, Joseph Tranchina, Robert "Doe"
(last name unknown), and Brian "Doe" (last
name unknown),

                            Defendants,
-------------------------------------------------------------X

Case No:

**COLLECTIVE & CLASS ACTION
COMPLAINT**

       Plaintiff Jang Fang Chen a/k/a "Tony" Chen ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, Hang & Associates, PLLC, hereby brings this complaint against Defendants Arirang Hibachi Steak House, Inc. d/b/a Arirang Hibachi Steakhouse, 986 Restaurant Corp. d/b/a Arirang Hibachi Steakhouse, Joseph Tranchina, Brian "Doe" (last name unknown), and Robert "Doe" (last name unknown) (collectively "Defendants") and alleges as follows:

## INTRODUCTION

      1.     This action is brought by Plaintiff, on behalf of himself as well as other employees similarly situated, against Defendants for alleged violations of the Federal Labor Standards Act, ("FLSA") 29 U.S.C. §§ 201 *et seq.*, of the New Jersey State Wage and Hour Law, N.J.S.A. §§34:11-56a *et seq.* ("NJWHL"), and of New York Labor Law §§190 et seq. ("NYLL"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

      2.     Upon information and belief, Defendants have willfully and intentionally committed widespread violations of federal and state labor laws by engaging in a pattern and

practice of unlawfully retaining part of tips owed to Plaintiff who worked as a hibachi chef and/or redistributing them to non-service employees in violation of Section 203(m) of the Fair Labor Standards Act.

3.     Defendants retaliated against Plaintiff for engaging in protected activity, namely, complaining to Defendants about their unlawful tip pooling practice and/or policy, by wrongfully terminating Plaintiff's employment.

4.     Defendants failed to record all of the time that Plaintiff and similarly situated employees of Defendants work or worked.

5.     Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the Defendants: (1) unlawful tips retentions, (2) punitive damages for retaliation against Plaintiff, (3) prejudgment and post-judgment interest; and/or (4) attorneys' fees and costs;

6.     Plaintiff further alleges pursuant to New Jersey State Wage and Hour Law ("NJWHL") that he is entitled to recover from the Defendants: (1) unlawful gratuity retentions, (2) damages due to Defendants' retaliation against Plaintiff, (3) prejudgment interest, (4) post-judgment interest, and (5) attorney's fees and costs.

7.     Plaintiff further alleges pursuant to New York Labor Law §190 et seq. and Title 12 of New York Codes, Rules and Regulations Part 146 ("NYCRR") that he is entitled to recover from the Defendants: (1) gratuities reduction due to unlawful tip pooling (2) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL, (3) liquidated damages equal to the sum of gratuities reduction pursuant to the NY Wage Theft Prevention Act; (4) liquidated/punitive damages for retaliation against Plaintiff (5) prejudgment and post judgment interest; (6) liquidated/punitive damages for retaliation against Plaintiff; and (7) attorney's fees and costs.

**JURISDICTION AND VENUE**

8.    This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New Jersey State Law and New York State Law claims pursuant to 28 U.S.C. § 1367(a).

9.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

**PLAINTIFF**

10.    Plaintiff Jang Fang Chen ("Plaintiff") is an individual residing in Brooklyn, New York.

11.    From approximately September 16, 2016 to August 24, 2017, Plaintiff Jang Fang Chen was employed by Defendants in their restaurant located at 986 Route 9, Parlin, NJ as a hibachi chef.

12.    Defendants dispatched Plaintiff to work at other Arirang restaurants located in Brooklyn and Staten Island when business so demanded.

**DEFENDANTS**

*Corporate Defendants*

13.    Upon information and belief, Defendants operate an integrated restaurant chain that regularly rotates and assigns employees to its various locations in New York, New Jersey, and Pennsylvania.

14.    Upon information and belief, Defendants operate five restaurants under the trade name Arirang Hibachi Steakhouse located in New York, New Jersey, and Pennsylvania.

3

15.     Upon information and belief, Arirang Hibachi Steak House, Inc. d/b/a Arirang Hibachi Steakhouse is a domestic business corporation organized under the laws of the State of New York with a principal business address at 23A Nelson Avenue, Staten Island, NY 10308.

16.     Upon information and belief, Arirang Hibachi Steak House, Inc. operates five restaurants located in New York, New Jersey, and Pennsylvania under the trade name Arirang Hibachi Steak House.

17.     Upon information and belief, Arirang Hibachi Steak House, Inc. at all relevant times is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

18.     Upon information and belief, Arirang Hibachi Steak House, Inc. purchased and handled goods moved in interstate commerce.

19.     Upon information and belief, 986 Restaurant Corp. d/b/a Arirang Hibachi Steakhouse is a domestic business corporation organized under the laws of the State of New Jersey with a principal business address at 986 Route 9 South, Sayreville, NJ 08859.

20.     Upon information and belief, 986 Restaurant Corp. operates a restaurant located at 986 Route 9, Parlin, NJ 08859.

21.     Upon information and belief, 986 Restaurant Corp. at all relevant times is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

22.     Upon information and belief, 986 Restaurant Corp. purchased and handled goods moved in interstate commerce.

***Owner/ Operator Defendants***

4

23.     Upon information and belief, Defendant Joseph Tranchina is the owner, officer, director and/or managing agent of Arirang Hibachi Steak House, Inc. d/b/a Arirang Hibachi Steakhouse at 23A Nelson Avenue, Staten Island 10308 and participated in the day-to-day operations of Arirang Hibachi Steak House and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; NJWHL §34:11-56a et seq. and the regulations thereunder, N.J.A.C. 12:56 et seq.; and is jointly and severally liable with Arirang Hibachi Steak House, Inc. (See Exhibit 2).

24.     Upon information and belief, Defendant Joseph Tranchina owns the stock of Arirang Hibachi Steak House, Inc. and manages and makes all business decisions including but not limited to the amount in salary the employees will receive and the number of hours employees will work.

25.     Upon information and belief, Defendant Robert "Doe" is the owner, officer, director and/or managing agent of Arirang Hibachi Steak House, Inc. and 986 Restaurant Corp. and participated in the day-to-day operations of Arirang Hibachi Steak House located at 986 Route 9 South, Sayreville, NJ 08859 and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; NJWHL §34:11-56a et seq. and the regulations thereunder, N.J.A.C. 12:56 et seq.; and is jointly and severally liable with Arirang Hibachi Steak House, Inc. and 986 Restaurant Corp. (See Exhibit 2).

26.     Upon information and belief, Robert "Doe" determined the wages and compensation of the employees of Defendants, including Plaintiff, and established work schedules

and work load of the employees, maintained employee records, and had the authority to hire and fire employees.

27.    Upon information and belief, Robert "Doe" is the store manager who has full operational control of Arirang Hibachi Steakhouse located at 986 Route 9, Parlin, NJ 08859.

28.    Robert "Doe" directed and dispatched Plaintiff to work at other Arirang Hibachi Steakhouses locations at 8812-14 4th Avenue, Brooklyn 11209, and at 23A Nelson Avenue, Staten Island 10308.

29.    Upon information and belief, Defendant Robert "Doe" owns the stock of Arirang Hibachi Steak House, Inc.  and 986 Restaurant Corp. and manages and makes all business decisions including but not limited to the amount in salary the employees will receive and the number of hours employees will work. (See Exhibit 2)

30.    Upon information and belief, Defendant Brian "Doe" is the owner, officer, director and/or  managing  agent  of Arirang Hibachi Steak House, Inc. and 986 Restaurant Corp. and participated in the day-to-day operations of  Arirang Hibachi Steak House restaurant chain and acted  intentionally and  maliciously  and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; NJWHL §34:11-56a et seq. and the regulations thereunder, N.J.A.C. 12:56 et seq.; and  is  jointly and  severally  liable with Arirang Hibachi Steak House, Inc. and 986 Restaurant Corp.  (See Exhibit 2).

31.    Upon information and belief, Brian "Doe" determined the wages and compensation of the employees of Defendants, including Plaintiff, and established work schedules and work load of the employees, maintained employee records, and had the authority to hire and fire employees.

32.    Upon information and belief, Brian "Doe" is the general manager who has full operational control of all locations of Arirang Hibachi Steakhouse.

33.    Upon information and belief, Defendant Brian "Doe" owns the stock of Arirang Hibachi Steak House, Inc.  and 986 Restaurant Corp. and manages and makes all business decisions including but not limited to the amount in salary the employees will receive and the number of hours employees will work. (See Exhibit 2)

34.    Plaintiff has fulfilled all conditions precedent to the institution of this action and/or conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

35.    Plaintiff brings this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants at their restaurant locations for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") (the "Collective Action Members"). Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than forty (40) Collective Action members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiff submits that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

36.    Plaintiff will fairly and adequately protect the interests of the Collective Action Members, and have retained counsel that is experienced and competent in the field of employment

law and class action litigation. Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

37.     This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

38.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

39.     Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiff and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

c. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

40.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

41.    Plaintiff and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

## CLASS ACTION ALLEGATIONS

**The New Jersey Class**

42.    Plaintiff brings his NJWHL claims pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is two (2) years before the filing of the Complaint in this case as defined herein (the "NJ Class Period").

43.    All said persons, including Plaintiff, are referred to herein as the "New Jersey Class."

44.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

*Numerosity*

45.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the

9

precise number of such persons is unknown, and the facts on which the calculation of the number

is presently within the sole control of the Defendants, upon information and belief, there are more

than forty (40) members of the class.

***Commonality***

46.    There are questions of law and fact common to the Class which predominate over

any questions affecting only individual class members, including:

> a.    Whether Defendants employed Plaintiff and the New Jersey Class within the
> meaning of the NJWHL;
>
> b.    Whether Defendants unlawfully retained tips due to Plaintiff and the New
> Jersey Class;
>
> c.    Whether Defendants failed to keep true and accurate time records for all hours
> worked by Plaintiff and the New Jersey Class;
>
> d.    The nature and extent of New Jersey Class-wide injury and the appropriate
> measure of damages for the New Jersey Class; and
>
> f.    At what common rate, or rates subject to common method of calculation was
> and is Defendants required to pay the Class members for their work;

***Typicality***

47.    Plaintiff's claims are typical of those claims which could be alleged by any

member of the New Jersey Class, and the relief sought is typical of the relief that would be sought

by each member of the New Jersey Class in separate actions. All the New Jersey Class members

were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay

overtime compensation.

48.     Defendants' corporate wide policies and practices affected all New Jersey Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each New Jersey Class member. Plaintiff and other New Jersey Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

49.     Plaintiff is able to fairly and adequately protect the interests of the New Jersey Class and have no interests antagonistic to the New Jersey Class. Plaintiff is represented by attorneys who are experienced and competent representing Plaintiff in both class action and wage and hour employment litigation cases.

*Superiority*

50.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual New Jersey Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual New Jersey Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual New Jersey Class members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation

11

claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the New Jersey Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the New Jersey Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

51.    Upon information and belief, Corporate Defendants and other employers throughout New Jersey violate the NJWHL.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

**The New York Class**

52.    Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt persons employed by Defendants at each of their three restaurant locations in New York doing business as Arirang Hibachi Steakhouse on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "New York Class Period").

53.     All said persons, including Plaintiff, are referred to herein as the "New York Class." The New York Class members are readily ascertainable. The number and identity of the New York Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each New York Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under said F.R.C.P 23.

54.     The proposed New York Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

55.     Plaintiff's claims are typical of those claims which could be alleged by any member of the New York Class, and the relief sought is typical of the relief that would be sought by each member of the New York Class in separate actions.  All the New York Class members were subject to the same corporate practices of Defendants, as alleged herein, of unlawful tip pooling and/or retention. Defendants' corporation wide policies and practices, including but not limited to their failure to provide a wage notice at the time of hiring, affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each New York Class member. Plaintiff and other New York Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

56.     Plaintiff is able to fairly and adequately protect the interests of the New York Class and has no interests antagonistic to the New York Class.  Plaintiff is represented by attorneys who

are experienced and competent in representing Plaintiff in both class action and wage and hour employment litigation cases.

57.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual New York Class members lack the financial resources to vigorously prosecute corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. The losses, injuries, and damages suffered by each of the individual New York Class members are small in the sense pertinent to a class action analysis, thus the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual New York Class members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the New York Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the New York Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

58.     Upon information and belief, defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.   Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

59.     There are questions of law and fact common to the New York Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiff and the New York Class within the meaning of the New York law;

b. Whether Defendants maintained a policy, pattern and/or practice of gratuity violations to Plaintiff and the Rule 23 Class according to NYLL;

c. Whether the Defendants provided wage notices at the time of hiring to Plaintiff and class members as required by the NYLL;

d. At what common rate, or rates subject to common method of calculation were and are the Defendants required to pay the New York Class members for their work.

## STATEMENT OF FACTS

60.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

61.     Defendants knew that unlawful retention of gratuities, and/or operating an invalid tip pooling scheme that includes both tipped and nontipped employees, and failure to provide the

required wage notice at the time of hiring would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

62.     From approximately September 2016 to August 24, 2017, Defendants hired Plaintiff to work as a hibachi chef for their restaurant chain, namely Arirang Hibachi and Steakhouse.

63.     Plaintiff is assigned to work at the Arirang Restaurant located at 986 Route 9, Parlin, NJ 08859.

64.     As a hibachi chef, Plaintiff provides direct customer service and was a "tipped employee" under FLSA. 29 U.S.C. §203(t).

65.     Defendants regularly rotated and re-assigned their employees, including Plaintiff, to work at other Arirang locations.  Specifically, Defendants regularly assigned Plaintiff to work in their New York locations including Arirang Brooklyn at 8812-14 4the Avenue, Brooklyn, NY 11209 and Arirang Staten Island at 23A Nelson Avenue, Staten Island, NY 10308.

66.     Plaintiff identifies Brian "Doe" (last name unknow) as the General Manger of all 5 Arirang stores, who came to Arirang Parlin from time to time.

67.     Plaintiff identifies Robert "Doe" (last name unknow) as the manager of Arirang Parlin.

68.     Robert "Doe" interviewed and hired Plaintiff.

69.     Robert "Doe" supervised and controlled Plaintiff's work schedule including assigning Plaintiff to work at other Arirang locations in New York.

70.     Robert "Doe" determined the pay rate of Plaintiff.

71.     Robert "Doe" handled payrolls of Arirang Parlin employees including Plaintiff.

16

72.    Robert "Doe" communicated to Plaintiff his work assignments to other Arirang locations.

73.    Plaintiff identifies Robert "Doe" and James "Doe" (last name unknown), the assistant manager, as the managers responsible for accounting and distributing tips from the daily tip pool.

74.    Plaintiff's job responsibilities as a hibachi chef did not change when he works in different Arirang locations.

75.    Plaintiff was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

76.    From approximately September 2016 to October 2016, Plaintiff worked five days per week; from November 2016 to January 2017, Plaintiff worked four days per week; from January 2017 to August 24, 2017, Plaintiff worked 3 days per week.  His exact work schedule varied from week to week.

77.    During all relevant times, Plaintiff works the following schedule: each day, Plaintiff would work from 2:00 pm to 10:00 pm without break. Therefore, Plaintiff worked about 40 hours per week when he worked five days a week; 32 hours per week when he worked 4 days per week; 24 hours per week when he worked 3 days per week.

78.    Defendants did not provide Plaintiff proper notice regarding use of tip credit according to Section 203 of the Fair Labor Standards Act.

79.    Plaintiff was required to participate in a tip pooling scheme designed by Defendants that includes both tipped employees such as servers, hibachi chefs, and sushi chefs and nontipped

17

employees such as kitchen staff and dishwashers. For instance, Defendants' tip sheet indicates $105 tips were paid to Kitchen Chef and Dishwashers on August 13, 2017.

80. Upon information and belief, by including non-tipped employees into the tip pool, Defendants, in effect, deducted approximately $10 tips daily due to Plaintiff on weekdays and about $20 daily on weekends.

81. Plaintiff was paid a fixed daily rate of $90, regardless of the number of hours he worked.

82. Plaintiff received his compensation bi-weekly by check.

83. Plaintiff was not required to record his work hours such as punch time cards and was not paid for all hours worked per week.

84. Plaintiff was required to spend a substantial amount of time doing non-tipped side work.

85. Defendants did not provide Plaintiff with a proper pay stub with each wage payment.

86. On or about March 2017, Plaintiff complained to Head Chef "Kimmy" about Defendants' policy and practice of illegal sharing of tips with non-tipped employees.

87. On August 18, 2017, Plaintiff complained to Manager Robert "Doe" about Defendants' policy and practice of illegal sharing of tips with non-tipped employees and the deduction and his tips received on August 13, 2017.

88. On August 23, 2017, Plaintiff called Head Chef Kimmy to complain about Defendants' policy and practices regarding tips.

89. On August 24, 2017, Defendants terminated Plaintiff.


**STATEMENT OF CLAIMS**

18

**COUNT I**
**[Violation of Fair Labor Standards Act — Retaliation]**
*Plaintiff Jang Fang Chen only*

90.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

91.    Defendants willfully and unlawfully retaliated against Plaintiff for his exercise of protected activities, namely, making complaints to Defendants regarding their unlawful labor practices and policies.

92.    In retaliating against Plaintiff, Defendants knowingly acted in deliberate disregard of Plaintiff's rights in violation of Section 215 of the Fair Labor Standards Act.

93. As a direct and proximate consequence of Defendants' intentional, unlawful and retaliatory practices, Plaintiff has suffered, and continue to suffer, monetary damages including but not limited to, a loss of income, including past salary and future salary.

94. As a direct and proximate consequence of the Defendants' intentional, unlawful and retaliatory practices Plaintiff has suffered and continue to suffer non-monetary damages including, but not limited to, humiliation and mental and physical pain and suffering.


**COUNT II**

**[Violation of the Fair Labor Standards Act — Improper Retention of Tips**
**Brought on behalf of Plaintiff, FLSA Collective]**

95.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

96.    Plaintiff brings this Cause of Action pursuant to 29 U.S.C § 216(b) on behalf of himself and all other similarly situated persons, if any, who consent in writing to join this action.

97.    The FLSA prohibits any arrangement between the employer and a tipped employee whereby any part of the tip received becomes the property of the employer. A tip is the sole property of the tipped employee.

98.    Upon information and belief, Defendants did not allow Plaintiff and the FLSA Collective to retain all the tips they earned. Rather, upon information and belief, Defendants unlawfully retained and/or redistributed to non-tipped employees portions of the tips earned by Plaintiffs and the FLSA Collective.

99.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255. Defendants were aware or should have been aware that the practices described in this Collective Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

100.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

101.    Due to Defendants' FLSA violations, Plaintiff, on behalf of himself and the FLSA Collective, are entitled to recover from Defendants the tips that were unlawfully retained by the Defendants, an additional, equal amount as liquidated damages for Defendants' willful violations of the FLSA, together with interest, reasonable attorneys' fees, costs and disbursements in connection with this action, pursuant to 29 U.S.C. § 216(b).

## COUNT III

**[Violation of New York Labor Law Unlawful — Gratuities Violations
Brought on Behalf of Plaintiff and New York Class]**

20

102.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

103.    At all times relevant to this action, Plaintiff was employed by some or all of the Defendants within the meaning of NYLL §§ 2 and 651.

104.    NYLL § 196-d bars an employer from retaining "any part of a gratuity or of any charge purported to be gratuity [.]"

105.    Defendants retained part of Plaintiffs' gratuities for unauthorized purpose in violation of NYLL § 196-d.

106.    Defendants' retention of Plaintiffs' gratuities was willful.

107.    Accordingly, Plaintiff is entitled to recover from Defendants, jointly and severally, damages in the amount of unlawfully retained gratuities and an amount equal to one quarter of their unlawfully retained gratuities in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre-and post-judgment interest, pursuant to NYLL § 198.

## COUNT IV

### [Violation of New Jersey Wage and Hour Law—Unlawful Retention and Distribution of Tips brought on behalf of Plaintiff and New Jersey Class]

108.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

109.    At all times relevant to this action, Plaintiff was employed by some or all of the Defendants within the meaning of NJWHL. N.J.S.A. §34:11-4.1.

110.    Defendants willfully and unlawfully withheld and diverted Plaintiff's wages and tips in violation of N.J.S.A. §34:11-4.14.

21

111.    Plaintiff is entitled to the amount of the tips and wages withheld and diverted from him due to Defendants willful violation of New Jersey Wage and Hour Law. N.J.S.A. §34:11-4.14(b).

## COUNT V

### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement Brought on Behalf of Plaintiff and New York Class]

112.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

113.    At all times relevant to this action, Plaintiff was employed by some or all of the Defendants within the meaning of NYLL §§ 2 and 651.

114.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

115.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

116.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to each Plaintiffs even after the fact.

117.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VII

### [Violation of New York Labor Law—New York Pay Stub Requirement Brought on Behalf of Plaintiff and New York Class]

118.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

119.    At all times relevant to this action, Plaintiff was employed by some or all of the Defendants within the meaning of NYLL §§ 2 and 651.

120.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

121.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff' payday.

122.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, and the FLSA Collective Plaintiffs and Rule

23 Classes, respectfully requests that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action Members;

d)    A declaratory judgment that the practices complained of herein are unlawful under FLSA, NYLL, and NJWHL;

e)    An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)    An award of unlawfully retained gratuities due under FLSA, NYLL, and NJWHL plus compensatory and liquidated damages;

g)    An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful retaliation against Plainitff pursuant to 29 U.S.C. §216;

h)    An award of costs and expenses of this action together with reasonable attorneys' and

       expert fees pursuant to 29 U.S.C. §216(b), NYLL, and NJWHL;

i)     The cost and disbursements of this action;

j)     An award of prejudgment and post-judgment fees; and

k)     Such other and further legal and equitable relief as this Court deems necessary, just,

       and proper.

Dated: Flushing, New York
September 25, 2017

                                       Respectfully Submitted,

                                       HANG & ASSOCIATES, PLLC
                                       *Attorneys for Plaintiff, Proposed FLSA*
                                       *Collective and Potential Rule 23 Class*

                                       /s/__Ge Qu_____
                                       Ge Qu
                                       136-18 39th Ave. Suite 1003
                                       Flushing, NY 11354
                                       Tel: (718) 353-8588
                                       Fax: (718) 353-6288
                                       Email: rqu@hanglaw.com

# EXHIBIT 1

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by 986 Restaurant Corp. d/b/a Arirang Hibachi Steakhouse and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

CHEN, J, FANG
Full Legal Name (Print)

Signature

9/8/17
Date

# EXHIBIT 2

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
## FOR SERVICES RENDERED


TO:    JOSEPH TRANCHINA


PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Jang Fang Chen and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of  Arirang Hibachi Steak House Inc. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.


Dated: September 25, 2017

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

TO:    Brian "Doe"


     PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Jang Fang Chen and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of  Arirang Hibachi Steak House Inc. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.


     Dated: September 25, 2017

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
## FOR SERVICES RENDERED

TO:    Robert "Doe"


PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Jang Fang Chen and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of  Arirang Hibachi Steak House Inc. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.


Dated: September 25, 2017

# EXHIBIT 3

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND
MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE
BUSINESS CORPORATION LAW**

TO:   ARIRANG HIBACHI STEAK HOUSE, INC.

      d/b/a Arirang Hibachi Steakhouse and Sushi Bar

      23A Nelson Avenue

      Staten Island, NY 10308

      PLEASE TAKE NOTICE, that Jang Fang Chen and others similarly situated employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

      HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts therefrom on or after five (5) days from receipt of this notice.

      Dated: September 25, 2017